IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Coach, Inc, and Coach Services, Inc.,    :

        Plaintiffs    :    Civil Action 2:09-cv-00241

  v.    :    Judge Graham

Cellular Planet, *et al.*,    :    Magistrate Judge Abel

        Defendants    :

## Report and Recommendation

Plaintiffs Coach, Inc. and Coach Services, Inc. (collectively "Coach") bring this action for trademark counterfeiting and infringement. Coach is a manufacturer of high-end luxury products, including handbags. This matter is before the Magistrate Judge for report and recommendation on Coach's November 10, 2009 motion for default judgment and permanent injunction against defendants Hamid Arafat, Mohammed Abdallah, SSL Properties Inc., Marathon YMA, and Kingdom Fashions (doc. 36).

On March 3, 2010, the Magistrate Judge held a hearing under Rule 55(b)(2), Fed. R. Civ. P "to determine the amount of damages" and for plaintiffs to demonstrate a *prima facie* case for liability. At the hearing, plaintiffs proved the following facts by a preponderance of the evidence.

**Facts.** April Pyatt, Coach's intellectual property manager, provided uncontroverted testimony establishing the following facts. Coach sells its products

1

internationally through the internet, wholesale distributers, and its own retail stores. It owns a number of registered trademarks, including those found in Exhibits 2 through 8. All of these marks are currently used by Coach.

Counterfeiting tarnishes the Coach brand. Some prospective customers will not purchase Coach products for fear others will think it is counterfeit. Others will see shoddy counterfeit products and think they are genuine Coach. Some will bring counterfeit products to Coach for repairs. Counterfeiting also lowers Coach's profits and deprives government of tax revenues.

Coach has key proprietary elements in its products that make it possible to detect counterfeit products. Coach also polices factories in Asia, working with local law enforcement to close factories producing counterfeit Coach products.

Coach products can also be distinguished from counterfeit by price point, materials and distribution channels. The average price of a Coach handbag is $335. Coach uses only quality materials in its bags. It uses only to top 10% of leather and high quality fabric. It does not authorize distribution of its products out of the trunk of a car or back door of a van.

Coach did not authorize or consent to defendants Kingdom Fashions, Hamid Arafat, Mohammed Abdallah or Marathon YMA to use its trademarks.

The testimony of <u>Detective Michael Hicks</u>, Columbus Police Department, established the following facts by a preponderance of the evidence. In September 2009, Det. Hicks went to the Marathon Gas Station, 744 E. Hudson, Columbus, Ohio as part of

a Nuisance Abatement Group that was inspecting businesses with liquor licenses. There was a blue van parked at the gas station. Mr. Diallo had a display table and was selling clothing, DVDs, sunglasses, wallets, belts, handbags, perfumes, and the like. Det. Hicks observed Diallo sell merchandise to a customer. Det. Hicks asked the price of a DVD. It was of poor quality, with a photocopy of the movie title and a white DVD. Det. Hicks impounded the blue van. Exhibit 9 contains 8 photos of the blue van and its contents.

Mohammed A. Mouneimne was the owner of the Marathon Gas station. Diallo had permission to be on the gas station lot.

The testimony of <u>Andrew R. Haney</u>, an investigator for Bruce Kingsland and Associates, established the following facts by a preponderance of the evidence. He does fieldwork on counterfeit investigations for his employer's customers, including Coach. In 2006 and periodically thereafter, Haney received training on detecting counterfeit Coach products. He is familiar with the registered trademarks in Exhibits 2 through 8 and reviewed them and similar material before doing field work in October 2008 for Coach in this case. When he went to Magic Fashions in October 2008, Haney saw more than 40 bags. These bags used the Coach Double C mark (Exhibits 5 and 6), Script Coach (Exhibit 7) and Placard Type (Exhibit 3). The salesperson, Hamid Arafat, offered Haney a counterfeit Coach bag for $45 dollars.

In December 2009, Haney went to Magic Fashion and purchased a Coach bag. The salesperson told Haney the bag was counterfeit. There were three registered Coach trademarks on the bag (Exhibits 2, 5, 6, and 8).

3

Haney first visited Kingdom Fashions, 1970 Morse Road, Columbus, Ohio, in October-November 2008. He saw a substantial inventory of Coach products (more than 50). In January 2009, Haney purchased a counterfeit Coach bag at Kingdom Fashions for $40. It had the Coach Double C and name plate marks (Exhibit 2). In January 2009, there were more than 30 counterfeit Coach bags at Kingdom Fashions.

In October-November 2008, Haney saw an African American male near the door of the Marathon Gas station, 744 E. Hudson, Columbus, Ohio selling counterfeit goods, including Coach products. He drove by the location dozens of times and saw Diallo on the lot doing business. In January 2009, Haney went to the gas station and Diallo offered him a Coach bag for $50. Haney told Diallo he was there on behalf of Coach and handed him a cease and desist letter. The back of the van was loaded with merchandise. Haney saw more than 50 Coach products offered for sale outside the van. Diallo acknowledged that the bags were knock-offs.

During that January 2009 visit to the Marathon station, Haney spoke with Mouneimne, who said he was in charge. Mouneimne said that Diallo paid a rental amount to the station. That amount depended on his sales. Mouneimne acknowledged that Diallo was selling counterfeit Coach bags. Mouneimne was courteous and cooperative. He acknowledged that it was wrong to have Diallo there selling counterfeit. Mouneimne said that he would see that Diallo no longer sold counterfeit there.

Diallo sold his merchandise within 10 feet of the door to the gas station. convenience store. He was easily seen from the convenience store clerk's position. Stores like counterfeit vendors because of the increased foot traffic. It makes the convenience store more secure. They charge vendors a nominal amount.

In September 2009, Haney went to the Columbus impound lot to examine the counterfeit merchandise in the blue van seized by Det. Hicks. There were 103 counterfeit Coach items, mostly handbags and just a few sunglasses. Each counterfeit handbag had a least two Coach trademarks. The photographs in Exhibit 9 were taken on the day Haney went to the impound lot. The April 2, 2009 letter Coach's lawyer sent to Marathon YMA was in the passenger seat area of the van. It noticed that a hearing on the motion for an injunction was scheduled for April 14, 2009.

Records for the Franklin County Auditor and Ohio Secretary of State indicate that Mohammed Abdallah owns Magic Fashions. When Haney asked Arafat whether he owned the store, he responded that the guy across the street at the gas station did.

**Default Judgment.** Rule 55(a) of the Federal Rules of Civil Procedure states that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules," default judgment may be entered. Fed. R. Civ. P. 55(a). Coach has satisfied the conditions of Rule 55, establishing that Defendants have failed to plead and meet no exception to default, as evidenced by the Clerk's entry of default. "Once a default is entered against a defendant, that party is deemed to have admitted all of the well pleaded allegations in the complaint, except for

5

those relating to damages." *Microsoft Corp. v. McGee*, 490 F. Supp. 2d 874 (S.D. Ohio 2007), *citing Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110-11 (6th Cir. 1995). Where the factual allegations of the complaint provide a sufficient legal basis for an entry of a default judgment, the court then conducts an inquiry to ascertain the amount of damages. *Arista Records, Inc. v. Beker Enter.*, 298 F. Supp. 2d 1310, 1311-12 (S.D. Fla. 2003).

**Discussion.** In order to establish a *prima facie* case of federal trademark infringement against Defendants, Coach must show that (1) it has a valid mark entitled to protection under the Lanham Act; and (2) Defendants used in commerce a reproduction, counterfeit, copy, or colorable imitation of Coach's registered mark in a way that would likely cause confusion among the relevant consuming public. *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 114-15 (2d Cir. 2006); *The Sports Authority, Inc. v. Prime Hospitality Corp.*, 89 F.3d 955, 960 (2d Cir. 1996). A trademark is a "registered mark" for purposes of the Lanham Act if it has been "registered in the United States Patent and Trademark Office under this chapter…" 15 U.S.C. § 1127.

Coach presented evidence of its ownership of seven valid registered trademarks that have been infringed by Defendants. These are U.S. Trademark Reg. Nos. 1,071,000; 1,070,999; 1,309,779; 2,626,565; 2,822,318; 3,413,536; 3,441,671 ("Coach's marks"). Copies of the federal registrations of these trademarks were included in Coach's Complaint, and clearly establish that Coach owns these marks, and they are therefore entitled to protection under the Lanham Act.

Coach also presented the following evidence establishing its *prima facie* case as to how Defendants have used have used counterfeits of Coach's marks in commerce:

- Defendant Marathon YMA: testimony of Coach investigator Drew Haney and Detective Michael Hicks showed that counterfeit "Coach" handbags have been sold on the Marathon YMA premises. Testimony established that the management of the Marathon YMA was aware that counterfeit or "boot leg" sales were being made. Testimony also established that Marathon YMA supported such sales, since it received compensation from the sales in the form of rental payments from the seller, Ibrahima Diallo. Pictures taken of the counterfeit "Coach" handbags showed that the handbags did indeed bear counterfeit marks, and were intended to be passed off as authentic Coach handbags.

- Kingdom Fashions: testimony provided by Drew Haney demonstrated that counterfeit "Coach" handbags have been offered for sale and sold on the Kingdom Fashions premises. On January 13, 2009, numerous counterfeit "Coach" handbags were offered for sale by Kingdom Fashions.

- Hamid Arafat: testimony provided by Drew Haney demonstrated that Mr. Arafat had been a knowing participant in the sale of counterfeit "Coach" handbags. Mr. Arafat offered for sale a counterfeit "Coach" handbag on January 12, 2009. Mr. Arafat was also overseeing the sale and offering for sale of counterfeit "Coach" handbags in 2008.

- Mohammed Abdallah: testimony provided by Drew Haney shows that Mr. Abdallah is the owner of Magic Fashions, a store where counterfeit "Coach" handbags have been sold and offered for sale.

There is also little doubt that the counterfeit use of Coach's marks is likely to cause confusion, mistake, or deceive the public because the entire purpose of a counterfeit good is to mislead, deceive and confuse customers and the public as to the origin and authenticity of the goods offered. For this reason, courts have found that counterfeits are inherently likely to deceive consumers that have come to recognize the registered marks. *See Phillip Morris USA Inc. v. Lee*, 549 F. Supp. 2d 839, 849 (W.D. Tex. 2008); *Microsoft Corp. v. Software Wholesale Club, Inc.,* 129 F. Supp. 2d. 995, 1007 n. 11 (S.D. Tex. 2000) (finding a likelihood of confusion existed where the defendants "sold counterfeit products on which plaintiff's registered marks appear in their entirety"); *Philip Morris USA Inc. v. Shalabi,* 352 F. Supp. 2d 1067, 1073 (C.D. Cal. 2004) ("[C]ounterfeit marks are inherently confusing."); *Gucci Am. Inc. v. Duty Free Appeal, Ltd.,* 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003) ("[C]ounterfeits, by their very nature, cause confusion."). Here, the goods at issue bear counterfeit marks that are "identical with or substantially indistinguishable from" the registered marks. *Rolex Watch USA Inc. v. Meece,* 158 F.3d 816, 826 (5th Cir. 1998) (quoting 15 U.S.C. § 1127). Therefore it is inherently likely that these goods are likely to cause confusion, mistake, or deceive the public.

At the hearing, Coach established its claims of trademark infringement by showing that defendants used counterfeits of Coach's registered marks in commerce and in connection with the sale and offering for sale of goods. These activities were likely to cause confusion, mistake, or deceive, and were done without the consent of Coach. Therefore, Defendants have violated 15 U.S.C. § 1114. Similarly, Defendants' acts of selling and offering for sale counterfeit "Coach" handbags constitute false designation of origin, false description, and false representation that the counterfeit handbags were made or are sponsored, approved, or authorized by Coach, in violation of 15 U.S.C. § 1125(a). Coach's claims of deceptive trade practices under Ohio law and common law trademark infringement are also met, since these claims are considered encompassed by the federal trademark infringement analysis. *See Victoria's Secret Stores v. Artco Equip. Co.*, 194 F. Supp. 2d 704, 724 n. 8 (S.D. Ohio 2002) ("The Court notes the same analysis applies to [federal] trademark infringement, unfair competition, Ohio common law, and Ohio's deceptive trade practices statutes.") Finally, Defendants' actions also constitute a violation of Ohio's consumer protection law, since deceptive acts are occurring in connection with consumer transactions.

The Lanham Act authorizes an award of statutory damages in lieu of actual damages. *See also Cable/Home Communication Corp. v. Network Prods., Inc.*, 902 F.2d 829, 850 (11th Cir. 1990) ("Generally, statutory damages are awarded when no actual damages are proven, or actual damages and profits are difficult and impossible to calculate"). Statutory damages for trademark infringement are available for up to

$200,000 per counterfeit trademark infringed, regardless of willfulness, and enhanced up to $2,000,000 per mark if the infringement is willful. 15 U.S.C. § 1117(c). The amount of statutory damages awarded to a plaintiff within the range provided does not depend on actual damages. In fact, as recognized by this Court, "statutory damages are appropriate in default judgment cases because the information needed to prove actual damages is within the infringers' control and is not disclosed." *Microsoft v. McGee,* 490 F. Supp. 2d at 882. *See also Peer Int'l Corp v. Pausa Records, Inc.*, 909 F.2d 1332 (9th Cir. 1990) (statutory damages appropriate regardless of proof of actual damages or defendant's profits); *Microsoft Corp. v. Tierra Computer, Inc.*, 184 F. Supp. 2d 1329, 1333 (N.D. Ga. 2001) (rejecting defendant's argument that plaintiff must prove actual damages before it can recover statutory damages).

Coach argues that because defendants have failed to respond to Coach's allegations, it is impossible to determine actual damages in this case. As a result, Coach seeks statutory damages under the Lanham Act. Although Section 1117(c) sets out the range available for statutory damage awards, the statute "does not provide guidelines for courts to use in determining an appropriate award" and is only limited by what "the court considers just." *See Tiffany, 282 F. Supp. 2d at 124-125;* 15 U.S.C. § 1117(c). As stated above, the amount of statutory damages recoverable under the Lanham Act is greater where the infringement is willful. A court may infer that a defendant's infringement is willful from the defendant's failure to defend. *Id.* ("By virtue of the default, the [defaulting party's] infringement is deemed willful."); *Arista Records, Inc., v. Beker Enter.*,

*Inc.*, 298 F. Supp. 2d 1310, 1313 (the court may infer willful infringement because of default).

Here, the facts show that Defendants' acts of infringement have been willful. Marathon YMA was aware of the counterfeit nature of goods being sold on its property. Evidence shows that the management of the Marathon was aware that Ibrahima Diallo was selling "boot leg" products, and that through rental payments Marathon YMA directly benefitted from sales of counterfeit products, including counterfeit Coach products. Even after Coach filed its suit against Marathon YMA, the counterfeit sales continued. Although knowledge of the counterfeit nature of goods is not required to violate the Lanham Act, evidence also shows that Kingdom Fashions, Hamid Arafat, and Mohammed Abdallah are all aware of the counterfeit nature of goods that they have sold. In order to sanction Defendants for their willful infringement, and to deter others from future infringing behavior, Coach is entitled to seek statutory damages of up to $2,000,000 for each trademark willfully infringed. 15 U.S.C. § 1117(c)(2). However, Coach only seeks statutory damages available for *non*-willful trademark infringement. Specifically, Coach seeks statutory damages of $100,000 per trademark infringed by each of Defendants. For Marathon YMA, who has willfully infringed at least 7 of Coach's trademarks,[1] Coach seeks a total of $700,000. Kingdom Fashions, Hamid Arafat, and Mohammed Abdallah have infringed multiple Coach trademarks in association

---

[1] These trademarks are Reg. Nos: 1,071,000; 1,070,999; 1,309,779; 2,626,565; 2,822,318; 3,413,536; 3,441,671.

with their sale of counterfeit "Coach" handbags. However, Coach only seeks statutory damages for 2 of its trademarks[2] infringed by these defendants, for a total of $200,000 in statutory damages from each of these defendants.

In *Microsoft v. McGee*, the Southern District of Ohio awarded plaintiff Microsoft $100,000 in statutory damages for each of five trademarks, plus $30,000 in statutory damages for each of 7 trademarks, for a total of $710,000 in statutory damages. *See* Exhibit A, *Microsoft v. McGee*, 490 F. Supp. 2d at 882-883. In *Microsoft*, default judgment was entered against the defendant for willful infringement. Furthermore, at the time *Microsoft* was determined, the amount of statutory damages prescribed by § 1117(c) was less than it is today.[3]

Substantial damage awards have made in other cases across the country. *See e.g.*, *Artista Records, Inc.*, 298 F. Supp. 2d at 1314 (after default, awarding statutory damages of $35,000 per 54 infringements for a total of $1,890,000); *Tiffany Inc. v. Luban*, 282 F. Supp. 2d at 125 (awarding $550,000 in statutory damages after default); *Microsoft Corp. v. Sellers*, 411 F. Supp. 2d at 921-22 (awarding maximum amount of statutory damages for non-willful infringement in an amount of $460,000 on summary judgment).

---

[2] These trademarks are 1,071,000; 2,626,565.

[3] At that time, 15 U.S.C. § 1117(c) allowed for "not less than $500 or more than $100,000 per counterfeit mark per type of goods or services sold" and "if the court finds that the use of the counterfeit mark was willful, not more than $1,000,000 per counterfeit mark per type of goods or services sold."

An award of $100,000 for each infringement is appropriate as to defendants Kingdom Fashions, Hamid Arafat, and Mohammed Abdallah. Marathon YMA is in a different posture, because it did not offer the infringing goods for sale, but instead permitted Diallo to sell counterfeit goods on its property. There is no evidence that Marathon YMA more than nominally profited from permitting Diallo's infringing conduct. Nonetheless, Marathon YMA damaged Coach. Accordingly, I recommended an award of $10,000 per violation.

Coach is also entitled to a permanent injunction to prevent any future infringement of its trademarks. The Lanham Act permits the issuance of permanent injunctions to prevent future violations. 15 U.S.C. § 1116. A plaintiff seeking a permanent injunction must demonstrate (1) that it has suffered irreparable injury; (2) that there is no adequate remedy at law; (3) "that, considering the balance of the hardships between the plaintiff and defendant, a remedy in equity is warranted"; and (4) it is in the public's interest to issue the injunction. *Microsoft v. McGee*, 490 F. Supp. 2dat 882, *citing Audi AG v. D'Amato*, 469 F.3d 534, 550 (6th Cir. 2006). With regard to the first factor, "Sixth Circuit case law holds that no particular finding of likelihood of entry or irreparable harm is necessary for injunctive relief in trademark infringement or unfair competition cases." *Id., citing Circuit City Stores, Inc. v. Carmax, Inc.*, 165 F.3d 1047, 1056 (6th Cir. 1999). "With regards to the second factor, the Sixth Circuit has explained that where there is potential for future harm from infringement, there is no adequate remedy at law." *Microsoft v. McGee*, 490 F. Supp. 2d at 882. Here the potential harm is

widespread. Evidence shows that Defendants' infringing activities have not been isolated events. Furthermore, Defendants have been involved with the sale of products bearing the counterfeit marks of companies other than Coach, which suggests that Defendants will continue to sell counterfeit goods, and makes it likely that Defendants will sell counterfeit "Coach" goods in the future.

As previously recognized by this Court, with regard to the balance of hardships, a permanent injunction is warranted because there is no harm to the Defendants inasmuch as an injunction will merely require Defendants to comply with the Lanham Act. *Microsoft v. McGee*, 490 F. Supp. 2d at 883. Lastly, it is in the public's interest to issue a permanent injunction. As in *Microsoft v. McGee*, enjoining Defendants' use of Coach's trademarks "would advance two fundamental purposes of trademark law: preventing consumer confusion and deception in the marketplace and protecting the trademark holder's property interest in the mark." *Id*.

The Lanham Act authorizes this Court to award Coach its reasonable costs and attorneys' fees. 15 U.S.C. § 1117(a). In the *Microsoft v. McGee* case previously before this Court, *Microsoft* was awarded statutory damages, a permanent injunction, and attorneys' fees and costs. *Microsoft v. McGee*, 490 F. Supp. 2d 874. At the Court's request, Coach is prepared to provide a breakdown of its attorneys' fees, paralegal fees, and costs incurred by Coach in prosecuting this action against Defendants.

**Conclusion.** For the foregoing reasons, the Magistrate Judge RECOMMENDS that the Court judgment be entered against defendants and award statutory damages

pursuant to the Lanham Act in the amounts of $70,000 against Marathon YMA, and $200,000 each against Kingdom Fashions, Hamid Arafat, and Mohammed Abdallah. The Magistrate Judge further RECOMMENDS that defendants be PERMANENTLY ENJOINED and restrained from engaging in future infringement of Coach's trademarks, and that Coach be awarded its reasonable attorneys fees and costs.

If any party objects to this Report and Recommendation, that party may, within fourten (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *Thomas v. Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also, Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk of Court is DIRECTED to mail a copy of the complaint and this Report and Recommendation to each defendant.

s/Mark R. Abel<br>
United States Magistrate Judge